UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20715-CR-COOKE

UNITED STATES OF AMERICA,

vs.

JAMES WAYNE LONG,
    a/k/a "J.W. Long,"

    Defendant.
_____ /

NOTICE OF INTENT TO INTRODUCE EVIDENCE UNDER FEDERAL RULE OF
EVIDENCE 404(b) AND INCORPORATED MEMORANDUM OF LAW

The Government hereby provides notice of its intent to offer evidence of defendant James Wayne Long's (a/k/a J.W. Long) ("Long") 2006 mail and wire fraud conviction for orchestrating a scheme to defraud numerous individuals out of approximately $2,000,000 by soliciting investments in a purported check-cashing business. This evidence is admissible under Fed. R. Evid. 404(b) because: (1) the prior conviction is relevant to an issue other than Long's character, namely, his intent, motive, and knowledge to participate in the substantially similar mail and wire fraud offenses charged here; (2) the jury will be able to determine that Long committed the prior offense through certified copies of the indictment and criminal judgment; and (3) the evidence will not result in unfair prejudice, especially weighed against its highly probative nature of Long's knowledge and intent.

## BACKGROUND

*The Current Indictment*: On September 22, 2016, Long was indicted with twelve co-defendants and charged with mail fraud and conspiracy to commit mail and wire fraud in

violation of Title l 8, United States Code, Sections 1341 and 1349, for his participation in a "boiler room" scheme that defrauded numerous investors out of millions of dollars. From approximately September 2009 through approximately December 2015, in the Southern District of Florida and elsewhere, Long's co-defendants Miguel Mesa, Craig Sizer and others participated in a scheme to defraud over 700 individuals out of approximately $23 million from the sale of stock tied to two corporations named Sanomedics International Holdings, Inc. ("Sanomedics") and Fun Cool Free ("FCF").

Beginning around September 2009, Sizer hired Mesa to hire other sales agents to solicit, offer and sell shares of Sanomedics and, later, FCF stock to investors via telemarketing. From approximately August 2014 through December 2015, Long and certain of his co-conspirators worked as sales agents in Mesa's "boiler room" and induced investors to buy FCF stock using numerous materially false and fraudulent statements and omissions including, among others, that no commission or fees would be charged to investors; that sales agents were paid in stock or by an hourly wage; that sales agents "guaranteed the safety of investment, or your money back;" that FCF would soon have an initial public offering with purported trading prices of $5 to $15; and that FCF had a partnership with Apple Inc. for its gaming applications. Sizer and his co-conspirators actually used 80% of FCF investor proceeds in other undisclosed commissions and fees, such as sales commissions and other monetary distributions to sales agents they hired, including Long. They defrauded over seventy (70) individuals out of more than $1 million through the sale of stock tied to FCF.

*The Prior Offense*: In 2006, Long was convicted on nine (9) counts of wire fraud and one (1) count of conspiracy to commit wire and mail fraud for orchestrating a substantially similar investment fraud scheme in the Southern District of Florida. *See United States v. Cash Today*

*USA, Inc, et al.*, No. 05-cr-60016 (S.D. Fla. filed Jan. 18, 2005) ("*Cash Today*").  Namely, between April 2, 2001 and December 31, 2001, Long and other unnamed co-conspirators fraudulently obtained over $2,000,000, by making fraudulent statements and material omissions to investors over the telephone and in mailings to induce them to invest in Long's purported check-cashing company, Cash Today USA, Inc.  *See id*., ECF No. 3.

During Long's five (5) day jury trial, twelve Cash Today investors testified to substantially the same experiences: after receiving and responding to unsolicited internet advertisements, they were contacted via telephone by Cash Today sales agents, "who offered them the opportunity to invest in a start-up company that would use their investments to make payday advance loans to customers at its check-cashing stores." *See United States v. Long*, 300 F. App'x 804, 809 (11th Cir. 2008).  The investors then received investment offering materials in the mail that contained numerous misrepresentations, including: that investors would receive 3% to 3.5% monthly returns (up to approximately 42% annually) that would be guaranteed by an established company called TeleCheck; that all investor funds would "be maintained in segregated trust accounts and utilized exclusively for the purpose of facilitating loans to Cash Today's customers;" that "no commissions would be paid out of the investor funds" and that "all expenditures" would be paid directly by Cash Today. *Id.* at 810.  The investors testified that they relied on these misrepresentations in deciding to invest their money. *Id*.  In total, Cash Today collected over $2,000,000 from investors, which it used to pay out $755,000 to an undisclosed partner of Cash Today called Republic Cash Advance ("RCA"), over $865,000 to the sales agents, over $208,000 to Long, as well as numerous other undisclosed payments. *Id*.  In total, Cash Today paid out $2,242,282, leaving only $146,996 in Cash Today's bank accounts. *Id*.

Long testified in his own defense and denied that he intended to defraud investors, but admitted that Cash Today had no relationship with TeleCheck, that the "guaranteed" language in the mailed offering materials was "not true" and, upon follow-up questioning by the district judge, "Long admitted that he moved funds from the trust account, which contained the investors' money, to the operating account, in order to pay expenses, including commissions." *Id*. at 811.

The jury found Long guilty on all ten (10) counts and he was sentenced to seventy two (72) months in prison. *Id*. at 812. The district court noted that "Long had defrauded 'trusting' and 'elderly people' out of their money, which some of the victims had been using 'for medical expenses,' and had shown no compunction about his criminal behavior." *Id*. at 811.

## ARGUMENT

Long's prior conviction is admissible under Fed. R. Evid. 404(b), which permits evidence of "other crimes, wrongs, or acts" to be introduced where: (1) the crime is relevant to an issue other than defendant's character, such as his motive, opportunity, intent, plan, knowledge or absence of mistake or accident; (2) there is sufficient proof for the jury to find that the defendant committed the bad act; and (3) the probative value of the evidence is not substantially outweighed by its prejudicial effect. *See United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citations omitted); *United States v. Giordano*, 261 F.3d 1134, 1140 (11th Cir. 2001). That test is easily satisfied here.

*First*, the evidence is relevant to an issue other than character, namely, Long's intent, motive, knowledge and absence of mistake. Critically, Long has put his intent at issue by pleading not guilty, and the Government may meet its substantial burden of proving intent by introducing qualifying 404(b) evidence. *See United States v. Delgado*, 56 F.3d 1357, 1365, 1367

(11th Cir. 2005).  In addition, the Government anticipates that Long will argue that he had no knowledge of the events surrounding the materially false statements.  However, "[p]ut simply, the fact that [Long] knowingly" orchestrated a substantially similar investment fraud scheme using substantially similar methods and misrepresentations, *see supra* at 2-3, "on a previous occasion makes it more likely that he *knowingly* did so this time as well, and not because of accident or mistake."  *See United States v. Jernigan*, 341 F.3d 1273, 1281–82 (11th Cir. 2003) (emphasis in original); *see also United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir. 1988) (holding that "trial court properly admitted evidence of the appellants' participation in prior boiler room activities for the purpose of helping establish the appellants' intent to commit [mail and wire] fraud in the instant case").

  Finally, Long's prior conviction constitutes material information that he had a duty to disclose because a reasonable investor would have been likely to consider it important in deciding whether to purchase FCF stock.  Courts have "repeatedly found" that failures to disclose facts such as prior convictions for criminal fraud constitute "material omissions" in securities fraud actions.  *U.S. S.E.C. v. Weintraub,* No. 11-Civ-21549, 2011 WL 6935280, at \*\*4-5 (S.D. Fla. Dec. 30, 2011) (citing cases); *see also Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312-13 (11th Cir. 2000) (mail and wire fraud statutes prohibit the omission of material facts where there is a duty to disclose implied by "the nature of the transaction and the relationship between the parties").  Indeed, after serving his previous seventy two (72) month sentence, Long was on supervised release until August 12, 2014, the same month Mesa hired sales agents to begin selling FCF stock.  *See Cash Today*, ECF No. 189.  Long also certified that he would not commit any additional crimes as a condition of his supervised release.  Long failed

5

to disclose any of these facts to potential FCF investors, which constitute independent material omissions and further demonstrate his knowledge and intent to deceive investors.

*Second*, the Government will present the 404(b) evidence through certified copies of Long's conviction, and "[i]t is elementary that a conviction is sufficient proof that [the defendant] committed the prior act." *Jernigan*, 341 F.3d at 1282 (internal quotations and citations omitted).

*Third*, there is no danger of unfair prejudice. As to the possibility of unfair prejudice, the Eleventh Circuit has explained:

> Whether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense. Factors to be considered include the strength of the Government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses and whether it appeared at the commencement of trial that the defendant would contest the issue of intent.

*See United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987). The striking similarity of Long's prior conviction with the charged offense gives it "strong probative value as to intent" that "is not substantially outweighed by undue prejudice." *See Giordano*, 261 F.3d at 1141; *see also United States v. Burke*, 645 F. App'x 883, 886 (11th Cir. 2016) (holding that defendant's prior conviction for mortgage fraud was properly admitted at his mortgage fraud trial because it was "plainly probative of his intent and was not substantially outweighed by undue prejudice").

Moreover, "[e]xclusion under Rule 403 is applied sparingly, and the balance under Rule 403 weighs in favor of admissibility." *See Becil v. Bank of Am., N.A.*, No. 10-Civ-20377, 2010 WL 8510158, at *1 (S.D. Fla. Oct. 6, 2010) (Cooke, J.) (citing *United States v. Cole*, 755 F.2d 748, 766 (11th Cir.1985)); *see also United States v. Fallen*, 256 F.3d 1082, 1091 (11th Cir. 2001). Rule 404(b) is "a rule of inclusion" and "'404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case.'" *Jernigan*, 341 F.3d

at 1280 (quoting *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994)).  A district court may also limit the prejudicial value of evidence by giving a limiting instruction to the jury. *See United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir. 1990).

## **CONCLUSION**

WHEREFORE, the Government respectfully requests that the Court allow the Government to introduce Long's prior 2006 conviction in its case-in-chief.

Dated: January 17, 2017.                         Respectfully submitted,

                                                 WIFREDO A. FERRER
                                                 UNITED STATES ATTORNEY

                                                 /s/ Roger Cruz
                                                 Roger Cruz
                                                 Assistant United States Attorney
                                                 Florida Bar Number 157971
                                                 99 Northeast 4th Street
                                                 Miami, Florida 33132
                                                 Telephone: 305-961-9207
                                                 Facsimile: 305-536-4699
                                                 Email: roger.cruz@usdoj.gov

                                                 /s/ Ryan D. Tansey
                                                 Ryan D. Tansey (A5502279)
                                                 Kevin B. Hart (A5501875)
                                                 Rebecca D. Ryan (A5502199)
                                                 Trial Attorneys
                                                 United States Department of Justice
                                                 450 5th Street, N.W.
                                                 Washington, DC 20530

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 17, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

       /s/ Ryan D. Tansey
       Trial Attorney, U.S. Department of Justice